UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:14-CR-38-GFVT-HAI-1 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| ELIZABETH SISCO, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove (D.E. 4), the Court considers reported violations of supervised release conditions by Defendant Elizabeth Sisco. District Judge Leon Jordan of the Eastern District of Tennessee entered a judgment against Defendant in January 2010 upon a plea of guilty for conspiracy to manufacture, distribute, and possess with intent to distribute methcathinone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to possess and distribute pseudoephedrine, knowing it would be used to manufacture methcathinone, in violation of 21 U.S.C. §§ 846 and 841(c)(2). Defendant received a sentence of seventy months imprisonment followed by a thirty-six month term of supervised release. Defendant began her supervised release term on August 8, 2014, and supervision was transferred to the Eastern District of Kentucky on September 22, 2014.

On October 24, 2014, the United States Probation Office (USPO) submitted a Supervised Release Violation Report (the "Report"), and four days later secured an arrest warrant from District Judge Van Tatenhove. D.E. 3. The Report charges Defendant with five violations. First, per the Report, Defendant violated Standard Condition No. 7, which proscribes controlled substance use, when her urine tested positively for the presence of buprenorphine via an instant

testing device on September 29, 2014. After initially denying the illegal use of any controlled substances, Defendant acknowledged use of a Suboxone strip by describing that use in writing on a Positive Urinalysis Admission Report. This is a Grade C violation. Second, in relation to this positive drug test and admission, the Report charges Defendant with failure to refrain from committing another federal, state, or local crime. Noting the Sixth Circuit's decision that use of a controlled substance includes possession and Defendant's criminal history, Violation Two charges Defendant with conduct that would be a federal crime, that is, possession of buprenorphine. Such conduct would be a Class E Felony pursuant to 21 U.S.C. § 844(a), Simple Possession of a Controlled Substance. This is a Grade B violation.

In Violation Three, the Report charges Defendant with a second violation of Standard Condition No. 7 based on a positive urine test for the presence of oxycodone and morphine on October 3, 2014. Following a denial of such use, the specimen was sent for laboratory testing, which confirmed the presence of oxymorphone (an oxycodone metabolite) and morphine. This is a Grade C Violation. In Violation Four, the Report charges that Defendant again violated federal law by, pursuant to Sixth Circuit case law, possessing oxycodone in violation of 21 U.S.C. § 844(a). This is a Grade B violation. In Violation Five, the Report charges that Defendant further violated federal law by, pursuant to Sixth Circuit case law, possessing morphine in violation of 21 U.S.C. § 844(a). This is also a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on November 4, 2014. D.E. 7. Following a preliminary hearing, the Court found probable cause to believe the violations set out in the Report occurred. *Id*. The United States moved for interim detention and Defendant argued for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

A final hearing was scheduled for November 14, 2014, but was continued to November 17, 2014. D.E.11.

At the final hearing on November 17, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 12. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all five violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for all five violations as described in the Report. In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations Two, Four, and Five under the standard of § 3583(e).

The Court has evaluated the entire record, the Supervised Release Violation Report and accompanying documents, and the sentencing materials from the underlying Judgment from the Eastern District of Tennessee. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to manufacture, distribute, and possess with intent to distribute methcathinone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to possess and distribute pseudoephedrine, knowing it would be used to manufacture methcathinone, in violation of 21 U.S.C. §§ 846 and 841(c)(2), which are Class C felonies. *See* 21 U.S.C. § 841; 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39

(6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations One and Three, and Grade B violations with respect to Violations Two, Four, and Five. Given Defendant's criminal history category of IV (the category at the time of the conviction in the Eastern District of Tennessee) and Grade B violations, *see* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is twelve to eighteen months.

Each party offered its own recommendation to the Court regarding an appropriate sentence. The United States urged the Court to impose a sentence of fifteen months imprisonment followed by a twenty-four month period of supervised release. The United States argued that the nature and circumstances of the underlying offense justify this sentence because it was a large scale conspiracy that represented a significant danger to the public at large. The United States further argued that this sentence will deter future criminal conduct, pointing out that Defendant originally received a sentence at the low end of her Guidelines Range in the underlying action. Finally, the United States argued that Defendant's violations constitute a severe breach of the Court's trust because the violations occurred a short period of time after Defendant was placed on supervised release, the conduct involved the use of multiple types of drugs, and Defendant lied to her probation officer about her drug use. Therefore, the United States argued a sentence in the middle of the Guidelines Range was appropriate.

4

Alternatively, defense counsel argued for a term of imprisonment of twelve months plus one day, and agreed with the United States' recommendation for a subsequent twenty-four month period of supervised release. In making this recommendation, counsel argued that Defendant has a severe drug problem that she has not addressed. Counsel stated that Defendant did not participate in the Bureau of Prisons Residential Drug Abuse Program ("RDAP") and has had no other form of drug treatment, and therefore does not know what stressors and triggers cause her drug use. Further, counsel stated that Defendant had obtained employment and was living in a stable situation with her mother when the violations occurred. Based on all of this, counsel suggested that her recommended sentence would meet the 18 U.S.C. § 3553 factors and send a message to Defendant, but not punish Defendant too harshly.

At the outset, the Court notes that Congress does *mandate* revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalfe*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that the use of a controlled substance constitutes possession under that subsection.")

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. The Court has also carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics. The nature and circumstances of Defendant's underlying conviction are very serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th

Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). A large drug trafficking conspiracy, such as the one Defendant was a part of, involves inherent and attendant dangers to any community. While Defendant did not return to drug trafficking upon release, she returned to using drugs which, as her criminal history indicates, represents a danger not only to herself, but the public at large. Defendant's use of three different drugs in a short period of time is a further indicator that Defendant's conduct is unpredictable when she is using drugs, posing an even greater threat to public safety.

Defendant's history and characteristics indicate a severe drug problem. This drug use has placed a significant strain on her relationships, caused her to lie to her probation officer, and resulted in criminal conduct while on release. Defendant has not received any treatment for her substance abuse problem, but treatment is certainly needed. During her term of imprisonment and the term of supervised release to follow, drug treatment will need to be provided. If Defendant can become and remain clean, she can become a productive member of society. However, if she cannot do this, as her past has shown, she will remain highly dangerous to herself, those around her, and the public.

The need to avoid unwarranted sentence disparities among defendants with similar records who have committed similar violations is addressed by the recommendation of a sentence within Defendant's Guidelines Range.

The Court reminds Defendant that the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a

6

limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e).

Defendant's conduct represents a significant breach of the Court's trust. She has a severe addiction, and it is troubling to the Court that she returned to drug use so quickly after her release from prison. Moreover, Defendant lied to her probation officer about her drug use, and she abused not one—but three—different drugs in a very short period of time. Defendant's sentence for the underlying offense of seventy months, which was the low end of her Guidelines Range, did not sufficiently lead to better decision making. Defendant has admitted that she has a problem with drugs which is a commendable first step. However, given her criminal history and violations in this matter, a significant term of imprisonment is warranted to protect the public and deter criminal conduct. A sentence of fifteen months is in the middle of the Guidelines Range and, for the reasons stated above, the Court finds it is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's convictions, pursuant to 18 U.S.C. §§ 841 and 3583(h), there is no maximum period of time that Defendant can be placed on supervised release following revocation. The Court finds that Defendant needs a significant amount of supervision following imprisonment to further learn to manage her addiction. Accordingly, the

Court recommends that, because Defendant violated so quickly within her original three-year term, a term of thirty-six months of supervised release is necessary.

Based on the foregoing, the Court **RECOMMENDS** revocation, a term of imprisonment of fifteen months, and thirty-six months of supervised release to follow under the conditions originally imposed by District Judge Jordan in the Eastern District of Tennessee. Further, the Court recommends that the Defendant be housed in the facility nearest to her mother's home for which she qualifies.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 20th day of November, 2014.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge