UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:14-CR-38-GFVT-HAI-1 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| ELIZABETH SCISCO, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Van Tatenhove, the Court considers a reported violation of a supervised release condition by Defendant Elizabeth Scisco.  D.E. 34.  District Judge Leon Jordan of the Eastern District of Tennessee entered a judgment against Defendant in January 2010 upon a plea of guilty for conspiracy to manufacture, distribute, and possess with intent to distribute methcathinone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to possess and distribute pseudoephedrine, knowing it would be used to manufacture methcathinone, in violation of 21 U.S.C. §§ 846 and 841(c)(2).  *See* D.E. 1-2 at 1.  Defendant received a sentence of seventy months of imprisonment followed by a thirty-six month term of supervised release.  *Id.* at 2–3. Defendant began her supervised release term on August 8, 2014, and her supervision was transferred to the Eastern District of Kentucky in October 2014.  *See* D.E. 1 at 1.

I.

This is not Defendant's first violation of the terms of her supervision.  In December 2014, Defendant's supervision was revoked after she admitted to the use of buprenorphine, oxycodone, and morphine, and associated criminal conduct.  D.E. 15.  Upon the recommendation of the undersigned, Judge Van Tatenhove revoked Defendant's supervised release and sentenced her to

fifteen months of imprisonment to be followed by thirty-six months of supervised release. D.E. 13 at 8; D.E. 15 at 2–3. A Request for Modifying the Conditions or Term of Supervision with Consent of the Offender (12B) was approved by the Court in April 2017. D.E. 16. That request was based upon Defendant's arrest in state court on a charge of fourth-degree assault following an altercation with her mother. *See id.* at 1–2. In granting the 12B, the Court added a condition requiring Defendant to participate in mental-health treatment at the direction and discretion of the probation office. *See id.* at 2–3.

In October 2017, Defendant's term of supervision was again revoked following her admission to the commission of a crime and failure to report an arrest. *See* D.E. 30 at 1. At that time, Defendant was sentenced to sixteen months of imprisonment to be followed by twenty-four months of supervised release. *Id.* at 2–3. That revocation judgment also included a special condition of Defendant's supervision that she was to be placed in a residential re-entry center for a period of six months upon her release from incarceration. *See id.* at 5.

On September 24, 2018, Defendant was released from the custody of the Bureau of Prisons to begin service of her term of supervision, and that date also marked the beginning of her placement into the residential re-entry center at Dismas Charities Manchester. On December 17, 2018, the United States Probation Office ("USPO") issued a Supervised Release Violation Report ("the Report') charging Defendant with one violation based on her dismissal from that center on December 7, 2018.

Specifically, the Report alleges that Defendant violated the special condition of her prior revocation judgment that stated: "Upon release from incarceration, the defendant must be placed in a Residential Re-Entry Center for a period of six (6) months." As grounds for this violation, the Report alleges that, according to correspondence from staff at Dismas Charities Manchester,

Defendant was found to have been texting sexually explicit photographs to another resident of the program, which is against the rules of the facility.[1]  The correspondence also includes a number of other disciplinary reports filed against Defendant since she began the program in September 2018.

On December 10, 2018, Defendant reported to the USPO to discuss her termination from the residential re-entry facility.  Defendant claimed the termination occurred because she had the contact information of a former Dismas Charities resident in her phone and because she had allowed another resident to use her phone even though the other resident's phone privileges had been revoked.  Defendant's reported conduct would constitute a Grade C violation.  *See* U.S.S.G. § 7B1.1(a)(3).

## II.

The Court conducted an initial appearance on the alleged violation pursuant to Federal Rule of Criminal Procedure 32.1 on January 28, 2019.  D.E. 36.  At that time, Defendant appeared pursuant to a summons.  *See id.*  The United States did not move for detention, and Defendant was released on her current conditions of release.  *See id.*

On February 13, the parties appeared for Defendant's scheduled final supervised release violation hearing.  D.E. 39.  However, recognizing certain discrepancies in Defendant's employment status, the Court continued the final hearing to February 25.  *See id.*  On that date, Defendant's final hearing proceeded as scheduled.  D.E. 40.  Defendant waived a formal hearing and stipulated to the violation set forth in the Report.  *Id.*  The Court found the stipulation was competently, knowingly, voluntarily, and intelligently entered.  *Id.*

---

[1] According to documentation, Defendant "signed and acknowledged on 9/6/2018 cell phone rules and regulations that clearly forbid[] this behavior."

3

Notably, Defendant qualified the scope of her stipulation by explaining that she had allowed another inmate to use her phone and had told the inmate to delete the exchanged messages, which she knew was in violation of the facility's rules. Defendant denied sending sexually explicit photos. Under 18 U.S.C. § 3583(e), the Court must find "by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3); *see also United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000) ("In order to revoke supervised release, the sentencing court must find by a preponderance of the evidence that a defendant has violated a condition of his supervised release."). Defendant's stipulation, even as qualified, permits the Court to find that she engaged in conduct that is a Grade C violation under the Guidelines because her actions violated the rules of Dismas Charities Manchester, which resulted in her termination from that facility. *See* U.S.S.G. § 7B1.1(a)(3).

At the final hearing, the government argued that, rather than a lengthy term of imprisonment, the Court should require her to serve eight weekends of intermittent confinement and that she should complete her current term of supervision. The defense joined in the government's request. Defendant addressed the Court, and she thanked the prosecutor for his belief that she can succeed. Defendant also informed the Court that she recognizes she needs to change her thinking patterns and that she does not want to lose her relationship with her children.

III.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pled guilty to conspiracy to manufacture, distribute, and possess with intent to distribute methcathinone, in violation of 21 U.S.C. §§ 846 and 841(a)(1), and conspiracy to possess and distribute pseudoephedrine, knowing it would be used to manufacture methcathinone, in violation of 21 U.S.C. §§ 846 and 841(c)(2),

4

which are Class C felonies. *See* 21 U.S.C. § 841; 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted).

Under § 7B1.1(a)(3), Defendant's admitted conduct qualifies as a Grade C violation. Given Defendant's criminal history category of IV (the category at the time of the conviction in the Eastern District of Tennessee) and a Grade C violation, Defendant's range, under the Revocation Table of Chapter 7, is six to twelve months. U.S.S.G. § 7B1.4(a).

IV.

The Court has reviewed the entire record, including the Report and its accompanying documents, Defendant's underlying judgment and sentencing documents, and the documents concerning Defendant's prior revocations and her 12B. The Court has also considered all of the 18 U.S.C. § 3553(a) factors imported into the § 3583(e) analysis. Likewise, the parties addressed the statutory factors in making their sentencing recommendations to the Court. Upon review, the Court will adopt the parties' sentencing recommendation and will not recommend that Defendant's term of supervision be revoked. Instead, the Court will recommend that Defendant serve eight consecutive weekends in confinement and that she complete her current term of supervision.

Regarding the statutory factors, the Court first considers the nature and circumstances of Defendant's underlying offense. Here, as demonstrated by the criminal judgment imposed against her by the Eastern District of Tennessee, Defendant was involved in drug conspiracies. D.E. 1-2. Defendant's prior involvement in such criminal conduct reflects what Defendant told the Court at her final hearing: she needs to change her thinking patterns.

Next, concerning Defendant's history and characteristics, this is the third time Defendant has appeared before this Court facing potential revocation of her term of supervision. The Court also observes that Defendant is pregnant and that she has recently obtained new employment, after losing her prior job. These considerations are all addressed by the parties' joint sentencing recommendation. Indeed, by requiring Defendant to serve intermittent weekends of confinement, she will be reminded of what can be lost if she does not comply with the terms of her supervision.

The need to deter criminal conduct and the need to protect the public from further crimes are not factors in this case. However, the need to provide Defendant with education, training, and treatment is implicated because Defendant needs help to understand that her thinking patterns are flawed. At her final hearing, Defendant expressed a desire to change her patterns and to become more focused on complying with the Court's and society's expectations of her.

The need to avoid unwarranted disparities among defendants with similar records who are found guilty of similar conduct is most often addressed by a recommended sentence within the Guidelines range. As explained above, Defendant's range is six to twelve months. Yet, in this case, and as recognized by the parties, a sentence outside of the advisory Guidelines range is appropriate. In such a scenario, the Court must provide a "specific reason" for going outside of the Guidelines range. *See United States v. Johnson*, 640 F.3d 195, 205 (6th Cir. 2011) (requiring that any deviation from the Guidelines range be supported by a specific reason that justifies the

6

extent of the deviation). The Court identifies several such reasons on this record. First, Defendant's violation does not implicate conduct of the type that incarceration addresses. In other words, Defendant's present violation is less severe than others the Court could imagine, but she still demonstrates a continued pattern of making terrible choices. She must learn that little decisions can have big consequences. Additionally, Defendant has already served a substantial amount of time in prison in relation to this case. Thus, the weekends of intermittent confinement are designed to keep Defendant out of trouble on the weekends and for her to recall what it is like to be removed from her everyday life.

Finally, the Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). Defendant has repeatedly shown that she has difficulty in complying with her terms of supervision, and this violation is no different. *See* D.E. 13 at 7 ("Defendant's sentence for the underlying offense of seventy months, which was the low end of her Guidelines Range, did not sufficiently lead to better decision making."). Defendant's breach of the Court's trust in this instance is exacerbated by her prior revocations.

In sum, the Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Accordingly, the Court will recommend that Defendant spend eight weekends of intermittent confinement as part of her current term of supervision and that she complete her current term of supervision.

V.

For the foregoing reasons, the Court **RECOMMENDS**:

(1) That Defendant's term of supervision *not* be revoked;

(2) That Defendant complete her current term of supervision, which is scheduled to expire on September 23, 2020, with the sole modification that Defendant be required to serve eight consecutive weekends of intermittent confinement; and

(3) That the USPO contact the undersigned following Defendant's term of intermittent confinement for the purpose of scheduling a status conference for the Court to see how Defendant is doing.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. *See* D.E. 40. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See*; *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 5th day of March, 2019.



**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**